(Decided 20th June, 1879.)

PHILIP HANSON HISS, and SUSAN HISS, his Wife, and others *vs.* THE BALTIMORE AND HAMPDEN PASSENGER RAILWAY COMPANY, and others.

*Question whether an Act of the Legislature authorizing the construction of a Horse car railway on a Street or avenue in Baltimore County, being an Extension of one of the Streets of Baltimore City, was Constitutional? and whether said street was a public Highway? Where the rights exercised under said Act are Constitutional they will not be held illegal because the language of the Act covers other rights not within the scope of the Legislative power—Matters arising subsequent to the filing of the Bill and not made the subject of a Supplemental bill, cannot be noticed on Appeal—Forfeiture of Charter.*

The complainants in their bill, alleged, that they were the owners of lots abutting upon D. street or M. avenue, between S. and B. streets in Baltimore County; that the bed of said street or avenue belonged to them, and that the same was a private way. That the defendants without their assent, and claiming incorporation under, and authority by, the Act of 1865, ch. 32, were laying a railway track along said street or avenue to the complainants' injury, without having condemned the right of way, or made any

Hiss and Wife, *et al. vs.* Balto. and Hampden Pass. Railway Co., *et al.*

compensation to them for their interest in the soil and the damages incurred. The bill then prayed for an injunction. The answer admitted the complainants' title, but denied that the said street was a private way, and charged it to be a public street or highway, and a very important thoroughfare. It admitted the laying of the railway track, but alleged it was only a horse car railway, which their charter fully authorized, and the defendants disavowed and forever renounced all claim to place a steam railway on said street, and insisted, that the law was wholly within legislative powers. The admissions and proof, showed, that the street or avenue in question had been thrown open to public use, and had been accepted and used by the public for many years; that lots had been sold calling for said street, and that it had been used for many years as a thoroughfare for all the ordinary modes of transit. HELD:

1st. That the complainants were estopped from denying it was such street or highway for all the purposes for which it might be fairly inferred that the dedication was intended.

2nd. That the Legislature had the power to confer upon the defendants the right to construct and use a horse car railway on said street.

3rd. That it was not necessary to determine whether under said Act of 1865, ch. 32, a steam railway, if attempted to be laid, would be without sufficient legal warrant, as the defendants were not laying claim to any such right, but were building a horse car railway only, and renounced all claim to lay any other.

4th. That it did not necessarily follow that said Act was wholly unconstitutional because something may be attempted under it, and may in the broad language of the Act seem to be covered by it, which the Legislature could not authorize. If the law will admit a construction which will justify that which was being done under it, and which by the terms of the law was clearly warranted by it, to that extent the law ought to be sustained.

5th. That the terms of the Act included the right to build a horse car railway, and such railway along a public street or highway, is not a new and additional servitude on the land.

After the filing of the bill, the time within which, by the terms of the Act of 1865, ch. 32, the defendant was required to complete its road, expired. No supplemental bill was filed suggesting that as an additional reason for the injunction, and subsequent to its expiration the commission to take testimony was issued and executed, and the bill was dismissed by consent *pro forma* for the purpose of an appeal. HELD:

Hiss and Wife, *et al. vs.* Balto. and Hampden Pass. Railway Co., *et al.*

1st. That under such circumstances, this Court on review must consider all the proceedings as relating to the time of filing the bill, and decide the cause according to the actual rights of the defendants at the time they were, at the instance of the complainants, arrested by injunction from proceeding with a work which was then legitimately authorized.

2nd. That the injunction granted originally on the complainants' prayer, ought not to have been granted when it was granted, therefore the final order dissolving it was correct.

3rd. That to hold otherwise on this point would in effect be declaring a forfeiture of the defendant's charter in an incidental way, without any proceedings instituted for that purpose.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and IRVING, J.

*Bernard Carter*, for the appellants.

If the Act of 1865, ch. 32, sec. 6, authorizes. the appellee, the Railway Company, to construct its road upon Maryland avenue, in front of the property of the appellants, without acquiring by grant or condemnation the right to do so, it is in this respect unconstitutional.

We make no question as to the law laid down in the cases of *White vs. Flannigan,* 1 *Md.,* 525, and *Moale vs. Mayor and City Council of Baltimore,* 5 *Md.,* 314. · But these cases do not establish the right of the Railway Company to lay its tracks on Maryland avenue in front of our property without condemnation or grant of the right.

These cases are expressly confined by the decisions in them to conveyances of lots in the city, which call for streets in the city, and have no application to conveyances in the county binding on roads.

And it will be seen that in the case of *Moale vs. Mayor and City Council of Baltimore,* 5 *Md.,* 314, it was conceded that there must be condemnation of the street, though it is said that the damages awarded would be nominal, that is damages for condemnation of it as a *street.*

When the question of dedication is considered therefore, to learn to what extent the dedication goes, we are to look to the uses designed to be made at the time of dedication, and the dedication goes no further. *City of Cincinnati vs. White's Lessee,* 6 *Peters,* 432.

Where a road, or avenue, is laid out in the county by private owners, though permissively open to the public to drive and ride over, the owners of property binding upon such road own the fee to the centre of the road, and the public have at the most only the right to make such use of it as was designed at the time it was so thrown open to the public, and this does not give the Legislature the right to grant to any corporation the right to lay down railroad tracks, or make any other such use of the road, without the grant of such right from the co-terminous proprietors, or by acquiring such right by condemnation. 22 *Vermont,* 484, 495 ; 3 *Kent,* 433 ; *Presby. Soc. vs. Auburn & Rochester R. R.,* (NELSON, CH. J.,) 3 *Hill,* 568 ; *Williams vs. N. J. R. R.,* 16 *N. Y.,* 116 ; *Stetson vs. Chicago R. R.,* 75 *Ill.,* 74 ; *Cox vs. Louisville R. R.,* 48 *Ind.,* 178 ; *Gray vs. St. Paul R. R.,* 13 *Minnesota,* 315, 318, 320 ; *Cooley on Constl. Lim.,* 546–556.

The application of the case of *Peddicord vs. Balto. & Catonsville R. R.,* 34 *Md.,* 480, was expressly limited to the facts of that case, and there the right of way has been condemned by the Turnpike Co. This case, therefore, is no authority for the facts of the case now before the Court ; whereas all that the evidence shows as to dedication is that the public were permitted to ride and drive over the road, which is *proved* to have been carried out by Mr. Smith himself.

But by the true construction of the 6th sec. of the Act of 1865, ch. 32, it was not intended by the Legislature to give the Railway Company the right to use the roads and streets therein mentioned, without first obtaining the assent of the property-holders binding thereon. The only design was to confer the right so far as the *public easement* was concerned, leaving the Company to deal with the private rights of individuals in the usual way. *Gray vs. St. Paul R. R.*, 13 *Minnesota*, 315, 318, 320; *Presby. Soc. vs. Auburn & Rochester R. R.*, 3 *Hill*, 569; *Williams vs. N. J. R. R.*, 16 *N. Y.*, 111; *Williams vs. Nat. B. P. R.*, 21 *Missouri*, 583, 584; *Balt. & Havre-de-Grace Turnpike Co. vs. Union R. R. Co.*, 35 *Md.*, 231.

In the absence of such a section the right to use the roads and streets would not have been implied. *Springfield vs. Conn. R. R. Co.*, 4 *Cushing*, 63. Hence the section.

By the Acts of 1865, ch. 32, and 1868, ch. 121, the Company has no right to do any work necessary to complete the road after January 1, 1878. *Regina vs. London, &c., R. R.*, 6 *Eng. Law and Eq.*, 220; *Plymouth R. Co. vs. Caldwell*, 39 *Pa.*, 340, 341; 1 *Red. on R.*, 393; *Peavy vs. Calais R. R.*, 30 *Maine*, 501; 1 *Red., on Railways*, 239, 240.

Therefore, the injunction should have been granted instead of the bill being dismissed.

On the question of jurisdiction, see *Mayor, &c., of Balt. vs. Appold*, 42 *Md.*, 442.

*L. L. Conrad* and *D. G. McIntosh*, for the appellees.

Maryland avenue lies in Baltimore County, and runs from the north side of North avenue, northward to Huntington avenue, also in Baltimore County. North avenue is the northern boundary of Baltimore City, and both that and Huntington avenue are admittedly public streets.

Across Maryland avenue, at right angles with it, between North avenue and Huntington avenue, run a series

of cross streets, which in this order northward are known as Denmead, Mankin, Brown, Shirk and Sumwalt streets. Maryland avenue between Mankin and Sumwalt streets, three squares, is the part of Maryland avenue in controversy in this case.

Maryland avenue has become a public way by derivation from two sources.

1st. Dedication.

2nd. By virtue of certain proceedings taken by the County Commissioners under the Act of 1874, ch. 441.

Dedication is defined to be an appropriation of land to some public use made by the owner of the fee, and accepted for such use by or on behalf of the public. The interest which the public thus acquires, is merely an easement or right of passage over the soil. *Angell on Highways, sec.* 132.

No particular formality is required to create a dedication. It may be made either with or without writing, by any act of the owner, such as throwing open his land to the public travel or platting it, and selling lots bounded by streets designated in the plat, thereby indicating a clear intention to dedicate, or an acquiescence in the use of his land for a highway; or his declared assent to such use will be sufficient. The vital principle of dedication is the intention to dedicate, and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made. *Time,* therefore, though often a very material ingredient in the evidence, is not an indispensable ingredient in the act of dedication. If the *act* of dedication be unequivocal, it may take place *immediately ;* for instance, if a man builds a double row of houses, opening into an ancient street at each end, and sells or lets the houses, that is *instantly* a highway. If accepted, and used by the public in the manner intended, the dedication is complete. Dedication, therefore, is a conclusion of fact to be drawn from the circumstances of

such particular case; the sole question as against the owner of the soil being, whether there is sufficient evidence of an intention on his part to dedicate the land to the public as a highway. *Angell on Highways, sec.* 142.

Dedication to the public use may arise out of a variety of facts and circumstances, which in some cases exist separately, and in others concurrently. In the case at bar almost every form, certainly all the ordinary and usual forms of fact and circumstances which have been held to create a dedication, will be found to exist. *White vs. Flannigan,* 1 *Md.,* 540 ; *Parker, et al. vs. Smith,* 17 *Mass.,* 415 ; *Moale vs. Mayor and City Council,* 5 *Md.,* 323 ; *Hawley vs. Mayor and City Council,* 33 *Md.,* 280.

So dedication may arise out of other circumstances. In *Rex vs. Lloyd,* Lord ELLENBOROUGH said "If the owner of the soil throws open a passage, and neither marks by any visible distinction, that he means to preserve all his rights over it, nor excludes persons from passing through it by positive prohibition, he shall be presumed to have dedicated it to the public." *Rex vs. Lloyd,* 1 *Campb.,* 262 ; *Surrey Canal Co. vs. Hall,* 1 *Scott's New Rep.,* 264—reported also in *Manning & Granger's Rep.,* 392 ; *Regina vs. Petrie,* 4 *Ellis & Blackburn,* 743, (*marginal page;*) *Jarvis vs. Dean,* 3 *Bingham,* 448.

Assuming, therefore, as established, that Maryland avenue, by dedication and otherwise, is, and was, a public street, avenue, or road, of Baltimore County in Baltimore County, the only remaining question presented is, whether the respondent company had power, under its charter, to lay down its tracks thereon. The answer to this question is contained in sec. 6 of the Act of 1865, ch. 32. The power there granted is of the most absolute and unrestricted character. No assent of the County Commissioners is required, or other formality. As regards "branches or lateral railways," contemplated by sec. 8, the assent of the County Commissioners *is* required, but not as regards the main track.

But were it otherwise, the complainants have no standing which entitles them to contest the company's performance of its duty, or its violation of its rights, under its charter, as respects the public highways of the county. The proper and only remedy in such a case is a criminal indictment against the company for obstructing the highway. The complainants, unless they can show special damage, distinct in degree and kind from that suffered by all other members of the community, (in which case an action on the case is their appropriate remedy,) have no civil remedy for the obstruction of the highway. *Houck vs. Wachter,* 34 *Md.,* 269.

One claim made by complainants' bill is, that, even assuming the easement of Maryland avenue to be vested in the public, nevertheless that easement is restricted to the proper use of the avenue as a highway; that the use of said street by a passenger railway is a *new burden* laid on the easement; and, therefore, a violation of complainants' rights as owners of the naked fee of the bed of the street.

In reply to this claim, we refer the Court to the case of *Peddicord vs. Baltimore, Catonsville, &c. Railway,* 34 *Md.,* 480; *Angell on Highways, secs.* 243, 245; 2 *Dillon on Corps., secs.* 555, 557, 564, 566; 6 *Wharton,* 25; 27 *Penn. St.,* 339, 354; *High on Injunctions, sec.* 528; *Lansing vs. Smith,* 8 *Cowen,* 146.

In conclusion, we have only to add that Maryland avenue is situated in the midst of a populous community—is almost as numerously bordered by dwellings as Charles street; and if the complainants have, as they claim, a right to close it up or restrict its uses to their own benefit, other proprietors of lots along its line have fallen into a trap which they little dreamed to exist, in law or in fact, when they purchased the houses they occupy.

IRVING, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Baltimore County, dissolving an injunction and dismiss-

ing the bill of the appellants. The bill charges, that the appellants are the owners of the lots abutting upon Decker street or Maryland avenue, between Shirk and Brown streets, in Baltimore County ; that the bed of said street or avenue belongs to the complainants, and that the same is a private way. It further charges, that the appellee, the Passenger Railway Company, without the assent of the complainants, and claiming incorporation under, and authority by, an Act of the Legislature passed in 1865, being chapter 32, is laying a railway track along said street or avenue to their injury, without having condemned the right of way or made any compensation to them for their interest in the soil and damages incurred; the bill then prays for an injunction. The answer admits title, but denies that the said street is a private way, and charges it to be a public street or highway, and a very important thoroughfare. It admits the laying of the railroad track, but alleges it is only a horse car railway, which their charter fully authorizes, and defendants disavow and forever renounce all claim to place a steam railway on said street, and insist that the law is wholly within legislative powers.

The case presents two questions. 1. Is Decker street or Maryland avenue a public street and highway ? 2. Is the authority given the Railway Company by their charter, Act of 1865, ch. 32, constitutionally imparted ? In other words, had the Legislature power to authorize the construction of such railroad in and along said street or highway ?

1. From the admissions of record, the proof in the cause, and the concession at bar, it is clear that the street or avenue in question has been thrown open to public use, and has been accepted and used by the public for many years ; that lots have been sold calling for said street; that it has been used for very many years as a thoroughfare for all the ordinary modes of transit ; so that we regard the appellants as estopped from denying it is such street or highway, for all the purposes for which it may be fairly inferred, that the dedication was intended. *White vs.*

*Flannigan,* 1 *Md.,* 540 ; *Hawley, et al. vs. Mayor and City Council,* 33 *Md.,* 270 ; 6 *Peters,* 431.

2. Was the Act of 1865, ch. 32, within the scope of legislative authority? Has the Legislature imposed a new servitude on the appellants' land, and added a burden not contemplated in the dedication, or reasonably incident to its use as a highway? This is a question which has been much debated, and has been decided very differently in the various States.

Judge DILLON, in his work on *Municipal Corporations, Vol. II, p.* 675, (*2nd Edition,*) says that " the weight of judicial authority at present is that where the public have only an easement in streets, and the fee is retained by the adjacent owner, the Legislature cannot, under the constitutional guaranty of private property, authorize a steam railroad to be constructed thereon against the will of the adjoining owner, without compensation to him. In other words, such railway, as usually constructed and operated, is an additional servitude." He adds that as to horse car railroads it is mostly held that they " do not create a new burden, hence the Legislature is not bound to, though it may, provide for compensation to the adjoining proprietor."

Denying that such distinction ought to be drawn, and is the law here, the counsel for the appellants contends, that the Act of 1865, under which the appellees claim their authority, gives an unqualified right to build any kind of railway, and that as a steam railway may be constructed under that Act, the law could not be constitutionally passed; and is, therefore, void. It is not necessary for us to determine whether a steam railway, if attempted to be laid, would be without sufficient legal warrant, which Judge DILLON says, notwithstanding the preponderance of decisions, is " still the subject of fair debate;" for the appellees are not laying claim to any such right. On the contrary, they are building a horse car railway only, and renounce all claim to lay any other, and make that dis-

claimer a part of their answer that they may be forever bound thereby. It does not necessarily follow, that the Act is wholly unconstitutional because something may be attempted under it, and may, in the broad language of the Act, seem to be covered by it, which the Legislature could not authorize. If the law will admit a construction that will justify that which is being done under it, and which, by the terms of the law, is clearly warranted by it, to that extent the law ought to be sustained. All intendments will be made in favor of the constitutionality of a statute, that is not necessarily, by its provisions, unconstitutional. If, in this case, that which the appellees are doing under their charter, is warranted by their charter, and within the power of the Legislature to authorize, they ought not to be enjoined. The terms of the Act are so broad, it is clear that it includes the right to build a horse-car railway. It is a case of the major, including the less. The question then recurs, is a horse car railway along a public street or highway a new and additional servitude on the land? It is well established, that a highway cannot be diverted, by the authority of the Legislature, or those who enjoy the easement, to other purposes than those for which it was dedicated or acquired; nor can it be so enlarged as to cumulate burdens on the land not reasonably contemplated in the dedication or condemnation. The theory upon which the Courts of Connecticut, New Jersey and Ohio, justify the use of public highways for laying horse car railways, is that the dedicator is presumed to have intended the highway to be used in such way by the public as would be most convenient and comfortable for travel, or doing any necessary work; and that any improved mode of using the road, for any of the contemplated objects and convenience, is not an invasion of the rights of the owner of the abutting land. It has been further held that to sustain a claim of intrusion on his rights such owner must show some injury other and different from that sustained

by the public generally, for whose use the roadway has been dedicated. *City R. R. Co. vs. C. R. R. Co.*, 20 *N. J.*, 61; 17 *N. J. Eq.*, 75; 14 *Ohio*, 523, and *Elliott vs. R. R. Co.*, 32 *Conn.*, 579.

Judge COOLEY draws a distinction between streets taken or dedicated for city or town purposes, and country highways. He thinks that a *street* is to be regarded for *all* the ordinary purposes of a street, not only as such as have been hitherto adopted, but those "demanded by new improvements and new wants," and includes within "new improvements and new wants," which the original dedication must have contemplated, grooved tracks for carriages, and regards them as "almost as much a matter of course as paving and grading." COOLEY's *Constitutional Limitations*, 556. This distinction, if supported by authority, upon which we do not pass, cannot and ought not to apply in this case; for, although the way is not technically within the city limits, its location, in such near proximity thereto, as an entering way into the city and exit therefrom; and in fact, as an extension of one of the city streets it must, and ought to be regarded as subject to the same burdens in the way of use which would legitimately fall on the street, of which it is, at the place in question, only an extension. It is so near the city proper, and used in such way by the city people and others; that when it was formally dedicated many years ago, it was then called Decker street, in consequence of the mode of occupation of the adjacent property, and the rapidly extending limits of *quasi* city occupancy. Under such circumstances, it must be supposed the dedicator intended it to be liable to all the uses of city streets, one of which, it was so absolutely certain, that in the growth of the town, it would become. In *Peddicord's Case*, 34 *Md.*, 479, this Court, in passing upon the rights of the Catonsville Passenger R. R. under its contract with the Turnpike Company, say the use so granted does not, (in the language of the Court in

14 *Ohio*, 523,) "exclude or seriously interfere with the original modes in which the highway was used; but simply adds another in furtherance of the same general object." The effort to distinguish this case from Peddicord's is vain. It is true that in that case the R. R. Co. derived their powers by contract, from the Turnpike Company, who had secured the easement, by legislative aid, through purchase or condemnation. Still it was only an easement, as a highway, for the ordinary and usual uses of a turnpike, which the Turnpike Company had obtained, and if the Turnpike Company had the right, under its charter, to authorize the Catonsville R. R. Co. to lay such a track along its line or road, and such use by the R. R. Co. did not add a new servitude upon the road, as against the adjacent proprietor, surely the public have acquired in Decker street or Maryland avenue a right of as high grade as the said Turnpike Company secured. If that be so, then the Legislature, representing the public, may grant this right of improved use of the highway. Whenever a case shall arise wherein the right is claimed under that statute to build another kind of road it will be time enough to consider that as part of the question.

The only remaining question to be considered, is the point made by appellants' counsel, that because, when the decree was passed and the injunction dissolved, the time within which the appellees were to complete their work had expired, it was error in the Court to dismiss the bill and dissolve the injunction ; and that then the injunction should have been made perpetual. Their time, it is contended, expired on the 1st day of January, 1878. No supplemental bill has been filed suggesting that as an additional reason for the injunction, and no proceeding below by which the point appears to have been raised. On the contrary, the case went to a commission for testimony, and all testimony was taken after the period named, and the bill was dismissed, by consent, *pro forma*, for the pur-

pose of appeal. Under such circumstances, therefore, this Court on review, must consider all the proceedings as relating to the time of filing the bill, and decide the cause according to the actual rights of the parties appellees at the time they were arrested, at the instance of appellants, by injunction, from proceeding with a work, which we hereby hold, was then legitimately authorized. If by reason of the delays incident to the litigation, the appellees have lost their right to finish their work, it is their misfortune; but the appellants cannot maintain their appeal by reason of it. The injunction granted originally, on complainants' prayer, ought not to have been granted when it was granted, therefore the final order dissolving it was correct. In addition to the reasons already assigned, it may be well to add, that to hold otherwise on this point would, in effect, be declaring a forfeiture of appellee's charter, in an incidental way, without any proceedings instituted for the purpose. We think the decree of the Circuit Court, dissolving the injunction and dismissing the bill, was right.

*Decree affirmed with costs.*

