HENRY S. DULANEY et al. *vs.* THE UNITED RAIL-
WAYS AND ELECTRIC CO. and GAITHER'S CITY
AND SUBURBAN EXPRESS CO.

*Ordinance Authorizing Construction of Switch Across Side-walk Con-
necting an Express Co. with a Street Railway Co.— Validity—Public
Use—Price Paid for Franchise in Streets—Legislative Power Over
Streets—Right to Transact Express Business on Street Railway—
Demurrer to Bill.*

One section of a municipal ordinance authorized a street railway com-
pany to lay down a curved track to connect its tracks with the ware-
house of an express company, "in accordance with the plat filed in
the office of the City Engineer." The second section of the ordinance
directed that the switch should be so constructed so as not to interfere
with, or encroach upon, the sidewalks and gutters of the streets. *Held*,
that the ordinance must be construed in connection with the plat and it
then appears that in spite of the contradictory provision of the second
section the ordinance authorizes the laying of the switch across the
side-walk to run into the company's warehouse, but that the rails must
be so laid as not to project above the level of the foot-pavement.

The Charter of Baltimore City confers upon the Board of Estimates the
power to determine the prices to be charged for franchises in the streets
granted by ordinances; and the Courts cannot hold an ordinance grant-
ing such a franchise to be invalid, merely because a small sum was
charged for it. when it is not alleged that the amount of the charge was
dishonestly arrived at, or was not fixed by the Board of Estimates in
the manner prescribed by the City Charter.

A company which carries for the public all kinds of express matter be-
tween a city and suburban points, is engaged in a public service, and
is not a strictly private business.

A municipal corporation may authorize a street railway company to con-
struct a switch across the sidewalk of a street, for the purpose of connect-
ing its tracks with the warehouse of an express company, whose cars,
carrying express matter for the public generally, are run over the lines
of the railway company. Such use of the street is for the benefit of the
public at large.

When a street railway company is authorized to transact an express busi-
ness on certain streets, it may give to one express company the ex-
clusive right to do that business on its lines, if such company affords to
the public reasonable express facilities.

The Charter of Baltimore City forbids the Mayor and City Council to

grant any franchises in the streets of the city without requiring adequate compensation to be paid therefor.   But that charter provision does not affect the right of the Legislature to make such grants in the streets of the city without compensation.

When a curved switch is constructed under municipal authority across the sidewalk of a city street connecting the warehouse of an express company with street railway tracks, both the railway company and the express company must so use the switch as not to interfere unnecessarily with the rights of the public and of the adjacent property owners; and cars cannot be permitted to stand upon the switch so as to prevent other vehicles from passing or unloading.

Upon demurrer to a bill in equity the facts alleged therein are taken to be admitted, but not the conclusions of law drawn therefrom by the pleader.

*Decided November 16th, 1906.*

Appeal from the Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*S. S. Field* and *Lewis Putzel* (with whom were *H. Steiner* and *Roger T. Gill* on the brief), for the appellants.

· ·It is, of course, settled that the city cannot grant a franchise in the public street for a private use.   *Townsend, &c.* v. *Epstein*, 93 Md. 538; *Van Witsen* v. *Gutman*, 79 Md. 405.

What is and what is not a public use is very learnedly discussed in the recent case of *Arnsberger* v. *Crawford*, 101 Md. 248, in which it is shown that there are two classes of decisions in this country upon this question; one, putting a loose, and the other a strict, construction upon the term public use; and this Court ranges itself emphatically with the strict constructionists.   Illustrations of what· is and what is not a public use may be found in 10 *Enc. of Law*, 2 ed., 1075 and 1078.

It is perfectly clear that the Mayor and City Council could not grant to the John E. Hurst Co. the right to build and operate an electric railway from their store to the depots and wharves.

It is equally clear that the Mayor and City Council could not grant to the John E. Hurst Co. the right to lay a track to connect their warehouse with the railway company's tracks, for the purpose of transporting *their cars, containing their goods*, by the railway company's lines, to and from the depots and wharves.

And it seems to us equally clear, that the Mayor and City Council could not grant to the *railway company* a franchise to lay a track into Hurst's warehouse; the reason being the same in both cases, viz: it would be granting a franchise for a *private* purpose, which is *ultra vires*.

In *Mikesell* v. *Durkee*, 34 Kan. 509, it was held that the city had no power to authorize railway tracks in a public street to be used to carry grain between defendants' *elevator* and existing tracks of Missouri Pacific R. R.

In *State* v. *Trenton*, 36 N. J. L. 79, it was held that the City Council could not grant to lumber dealers, the right to construct and operate a railroad in a street to carry their logs and lumber between their property and the Delaware and Raritan canal.

In *Glaessner* v. *Anheuser-Busch Brew. Co.*, 100 Mo. 508, it was held that an ordinance of the city of St. Louis granting the brewing company the right to construct and operate a railway to carry its beer between the brewery and the Mississippi river, over public streets, was void, and the construction of said railway was enjoined.

In *Fanning* v. *Osborne*, 102 N. Y. 441, it was held that a railway company which had authority to haul passengers *and freight*, could not use its tracks to haul the cars of a manufacturing corporation containing its machines; that such use of the street was unauthorized, and was restrained by injunction at the suit of an abutting property owner.

Now it is distinctly alleged in the bill in this case that the Gaither's Company, the owner of 407 W. Lombard St., into which the proposed tracks are to run, is engaged in a "private business," that the proposed track "is not for the public benefit or for use by the public, but is designed to be used solely

for the convenience and profit of a single property owner."
The defendant might deny these allegations by answer; and
resort would then be had to proof.

But taking these allegations as true, which must be done,
in passing on the demurrer, the ordinance, must, under
the authorities quoted be held *void* as an attempt to grant a
franchise in a public street for private use.

The Legislature, in giving the city power to grant fran-
chises for street railway tracks, certainly never contemplated
that the city would undertake to grant franchises to run cars
*on the sidewalks.* It would startle Baltimore to be told that
the *City Council* has the *power* to authorize the railway com-
pany to lay tracks and run cars *on the sidewalks.* And yet it
would be but little more inconvenient or dangerous to the
walking public for cars to be running on the sidewalk than it
would be to have curves from the streets into abutting houses
and warehouses, and cars, *propelled by electricity, darting in
and out of houses* across the sidewalk. It is true this is an
ordinance to run cars across the sidewalk into only *one* house,
and it may be that the railway company would not apply for
franchises to run across the pavement into very many houses
in a block, but as was said by this Court in *Townsend* v. *Ep-
stein,* 93 Md. 556; "If the municipality can grant a privilege of
the character of the one here in controversy it implies a power
to practically destroy a street (sidewalk) as an open, light, and
comfortable highway, and its use for the purposes of residence
or business by the abutting owners, in total disregard of the
rights of such owners.

In *State* v. *Trenton,* 36 N. J. L. 84, it is said: "A grant to
every one on the street, of a like nature with that now recited,
would render the highway well nigh impassable."

The United Railways and Electric Company has no au-
thority or franchise to haul the Gaither Company's express or
freight cars over its lines.

The Act of 1898, ch. 390, purports to authorize the Con-
solidated Railway Company to transact an express business
upon its lines of railways located in Baltimore City and adjoin-

ing counties;" but to quote the bill: "If this act be valid and effective and if the benefit thereof passed to the defendant as the successor of said Baltimore Consolidated Railway Company, still it would only authorize the defendant to run its own freight or express cars for the carriage of express matter for the public, and is no authority to the defendant to haul the private express or freight cars of one person or corporation only, and the plaintiff further shows that neither the Baltimore Consolidated Railway Company, nor the defendant, has ever transacted or pretended to transact an express business or carried or offered to carry for the public, any express matter whatsoever."

Bearing in mind that the proposed curve is to be used *exclusively* for cars of the Gaithers Company, if the railway company has no right to haul said cars, then the construction of said curve will be restrained.

But we go a step further and say that the railway company has no franchise to haul freight or express cars over the streets of Baltimore City, even its own cars, and it is a fact that it has never attempted itself to do any express or freight business. Its franchise as a street railway is a franchise to *carry passengers*, and does not include doing a freight or express business, the right to do which is a separate franchise. *St. Louis Ry.* v. *Kirkwood*, 159 Mo. 239; *Ry. Co.* v. *Ry. Co.*, 119 Ala. 105; *Brown* v. *Ry.*, 113 Ga. 462; *Schaaf* v. *Ry. Co.*, 66 Ohio State, 215.

"The grant of a right of way for one purpose will not authorize the use of the road for another and different purpose." *Williams* v. *Natural Bridge and Plank Road Co.*, 21 Mo. 582; *Belcher Sugar Refining Co.* v. *St. Louis Grain Elevator Co.*, 82 Mo. 125; *Carli* v. *Stillwater Street Railway Co.*, 28 Minn. 375; *Turnpike Co.* v. *United Ry. & Elec. Co.* 93 Md. 138; *Am. Tel. Co.* v. *Pearce*, 71 Md. 535

Nor can the railway company claim the right to do an express business over the streets of Baltimore under the Act of 1898, ch. 390. That Act must be read in connection with sections 8, 9 and 37, of the City Charter passed

*by the same Legislature.* · The same Legislature, which in the new Charter, expressly provided that no franchise to use the streets of Baltimore should be granted for longer than twenty-five years (sec. 9); nor without adequate compensation to be ascertained by advertisement (sec. 37); and hedged about the granting of franchises with other elaborate provisions; could not have intended, by ch. 390, to *give away* for nothing the right to use the streets of Baltimore for an *unlimited* time. The two Acts can well stand together.  Ch. 390 was necessary in order to give the railway company the right to carry on an express business over its lines in the *"adjoining counties,"* and so far as the Act relates to Baltimore city, it must be construed in connection with the provisions of the City Charter, *passed at the same session of the Legislature,* the two Acts being *pari materia.*· This rule of construction was applied by this Court in *Purnell·* v. *McLane,* 98 Md. 589.

So here, the two Acts having been passed by the same Legislature, and almost at the same time, ch. 390 must be construed to give the right to the railway company to carry on an express business over its lines in the counties, and also in the city *upon obtaining a franchise therefor* in accordance with secs. 8, 9, 37 of New Charter.  After making elaborate provision for the city to obtain *full value* for franchises, and to grant them only for twenty-five years, it is not to be supposed that the Legislature *intended* to *give away forever* a highly valuable franchise in the streets of Baltimore, even granting that it had the power to do so.

This construction of ch. 390 also accords with Rule 12, Art. 1, of the Code of 1904.  The New Charter, (ch. 123, Acts 1898) is a Public *Local* Law, and, where it conflicts, must prevail over the *general* Act, ch. 390.  There is yet another view which may be taken of the Act of 1898, ch. 390, so far as it may be construed to grant a franchise to use the streets of Baltimore City.  This Act is a *"special* law" in favor of *one* corporation only.  This Act was approved April 9th, 1898.  At that time there was an *"existing general law,"* (the New Charter, approved March 24th, 1898) providing for

granting franchises in the streets of Baltimore City. Art. 3, sec. 33, of the Constitution provides: "And the General Assembly shall pass no special law for any case for which provision has been made by an existing general law."

Therefore, if the *special* Act of 1898, ch. 390, is construed to grant a franchise in the streets of Baltimore City, it is, to that extent, void. *27 Enc. of Law*, 2 ed. 12.

The railway company has never obtained any franchise to carry express or freight over the streets of Baltimore. It is true, as alleged in the bill, that it is hauling the Gaither Company's cars over its lines in Baltimore city, but the bill also alleges, *and the demurrer admits that*, "the defendant, without any warrant or authority of law, hauls said freight cars."

Now, it being admitted by the demurrer that the Railway Company has no warrant or authority of law to haul the Gaither Company's cars, it follows that a track to be built across a public sidewalk, *solely for said freight cars*, is unlawful, and the construction thereof should be restrained.

The second and third sections of the ordinance in question both positively and negatively confine the grant to the *street;* negatively, in that the entire phraseology of sections two and three are applicable to tracks in a street, and positively, in the express provision that the track to be laid should not interfere with or *encroach upon* the sidewalks or gutters.

The railway company might argue that a track could be so laid across the sidewalk as not "*interfere*" with the sidewalk, but it would be impossible to lay a track across the sidewalk and run cars over it without "*encroaching*" upon the sidewalk.

Indeed, one of the defendant's counsel admitted at the hearing below that sections two and three are the *usual provisions always inserted in ordinances for a track in a street*, that they do prohibit any track on the the sidewalk; but that they were inserted in this ordinance *by the mistake of defendant's lawyer*, who drew the ordinance, and he argued that the right to lay a track across the sidewalk given by the first section of the ordinance, could not be taken away by the second section.

In other words he admitted that there was a direct conflict

between sections one and two; that section one says they may lay a track across the sidewalk and section two says they shall not do so; and he argued that section one must prevail, upon the authority of *Burk* v. *Baltimore*, 77 Md. 469.   But the ordinance there involved was one providing for opening a street; and the decision merely was that in case of *discrepancies*, as to *courses and distances*, the plat should govern.

That case did not involve a flat contradiction throughout, between two sections of an ordinance, nor did it refer to an ordinance granting a franchise; in regard to which the rule of construction is against the grantee.

Applying this rule of construction, the second section of the ordinance, which prohibits laying a track on the sidewalk, in explicit terms, must prevail.   Or, if we say that neither is to prevail, there being an irreconcilable conflict between sections one and two, the result is that the ordinance is void. *Campbell's case*, 2 Bland, 209.

*R. Lee Slingluff,* for the United Rys., etc., Co., appellee.

*Geo. Weems Williams* (with whom was *William L. Marbury* on the brief ), for Gaither's Express Co., appellee.

It is established that a railroad company can lawfully make a contract with an express company whereby it agrees to furnish facilities to the express company to do its business, and also giving the express company exclusive right to do an express business on its lines.   *Baldwin's American Railroad Law,* 393, 394; *Express Cases,* 117 U. S. 1; *Sargent* v. *Boston, &c., R. Co.,* 115 Mass. 416; *Elliott on Railroads,* sec. 1453; 12 *Am. & Eng. Ency. of Law* (2 ed.), 543.

In the case at bar the Railways Company, by virtue of its being the successor to the Baltimore Consolidated Railway Company, which was expressly authorized by ch. 390 of the Acts of 1898, to transact an express business, is vested with ample power to transact an express business over its road. That being so, it follows from the authorities cited that it can lawfully select the express company as its agent to conduct

the express business over its lines. The fact that it only hauls the cars used by the express company is immaterial, provided the public is properly served.

It is urged in the bill of complaint that the Mayor and City Council had no legal power to grant the Railways Company the right to lay down tracks to connect its lines with the depot of the Express Company, for the reason that the granting of such a right devotes a portion of the public street and sidewalk to "a private purpose and not a public purpose, for the convenience or advantage of a single corporation, towit, the Gaither's City and Suburban Express Company."

We admit that the municipal corporation of the city of Baltimore is the trustee of the streets, holding the same for the benefit of the public, and cannot therefore, authorize their appriation to a *private use. Townsend, Grace & Co.* v. *Epstein,* 93 Md. 537; *Van Witzen* v. *Gutman,* 79 Md. 409. But we assert that the use of the streets by the Express Company is a *public* and legitimate street use.

That the use of the streets by the Railways Company for the carriage of passengers is a lawful street use is decided in *Hodges* v. *Baltimore Union Passenger Railway Co.,* 58 Md. 603. The theory is that streets are laid out and maintained for the purpose of accommodating traffic, that is, the passage and transportation of persons and goods from one part of a city to another, and that, accordingly, street railways, in carrying persons (and the same reasoning would apply to the transportation of goods) are simply facilitating in the most modern manner the accomplishment of the objects for which streets were lad out. It is suggested that the use of the tracks in question will not be for the public benefit but for the private profit of the Express Company. It is true that the Express Company will make profit indirectly out of the use of the tracks by causing to be transported for hire over the same, goods put into their custody for carriage. The same is true of the use to which railroads put their lines, but no one would attempt to argue therefrom that such a use is private and not for the public benefit. Public benefit and private

profit are not necessarily inconsistent. Surely it must be conceded that the public derive the same character of benefit from the carriage of goods as from the carriage of passengers, although it may differ in degree, and if the one is a public benefit the other must be. If the Express Company did not transport goods received by it as a common carrier for the public generally, there might be room for debate on this point. But express companies are common carriers. *Bank of Kentucky* v. *Adams Express Co.*, 93 U. S. 174. The Express Company is therefore engaged in a public service, and its proposed use of the streets is a public as distinguished from a private use.

We have been unable to find any case in which it has sought to be maintained that the use by an express company of a railroad company's tracks was private, which, it seems to us, is a strong argument that our contention is correct; but we have found a number of cases holding that the construction of tracks or sidings on to the premises of private corporations is a public use of property or streets sufficient to justify the exercise of the power of eminent domain, or the use of the public streets therefor, as the case might be.

Thus, in *New Central Coal Co.* v. *George's Creek*, 37 Md. 537, it was held that the Legislature, by virtue of the right of eminent domain, may authorize the condemnation of private property by a mining company for the construction of a railroad to be used for the transportation of coal from its mines, as such use is of a public nature; and the fact that the right should be placed in the hands and under control of a private corporation detracts nothing from the public nature of the use.

In *Knapp, Stout Co.* v. *St. Louis Terminal Rwy. Co.*, 126 Mo. 26, an ordinance granting permission for a railway switch on a public street for the use of stock yards, created for "the convenience of drovers, dealers and the public at large," was attacked as invalid on the ground that the switch was constructed for private purposes. The Court held that the switch was to be devoted to a public use and the ordinance valid. See also *Chicago Dock & Canal Co.* v. *Garrity et al.*, 115 Ill. 155.

In *Getz's Appeal*, 3 Am. & Eng. R. R. Cases, 186, it is held that the grant of a right to construct a railroad carries with it, by necessary implication, the right to construct all works and appendages usual in the convenient operation of a railroad, and sidings are among such works. In this case it is further held, that the Philadelphia and Reading R. R. Co., by virtue of the general railroad law of February 19th, 1849, and of sec. 17 of the Act of April 13th, 1846, extended to said company by the Act of April 14th, 1864, is authorized to construct sidings leading to manufacturing or mining estabments held by private owners, and for this purpose may take, by virtue of the delegated power of eminent domain in it reposed, the interjacent lands belonging to other parties.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from a decree of Circuit Court No. 2, of Baltimore City, sustaining the demurrers of the appellees, as defendants below, and dismissing the bill of complaint. The primary purpose of the bill was to procure an injunction restraining the United Railways and Electric Company of Baltimore from constructing and maintaining a switch from its main track on West Lombard street across the sidewalk to the warehouse No. 407 West Lombard street owned and used by the Gaither's City and Suburban Express Company. The bill incidentally asked that the Ordinance of the Mayor and City Council of Baltimore authorizing the construction of the switch be declared void. The appellants are the respective owners of warehouses on Lombard street adjacent to and near by that of the express company.

The bill was filed against the United Railways and Electric Company as sole defendant. Its material allegations are as follows:

That the complainants own large and valuable warehouses, on the south side of West Lombard street, adjacent to or near by the one of the Express Company, in which they conduct extensive manufacturing enterprises employing in that connection hundreds of persons largely young girls and women

who in going to and from their work traverse the sidewalk over which it is proposed to lay the switch and that the same thing is true of the patrons and customers of their respective factories. That the immediate neighborhood in which the appellants are located is rapidly being filled up with large factories and warehouses whose occupants and customers must also use the same sidewalk, and that the complainants, by reason of their close vicinity to the Express Company's warehouse, have a peculiar interest above that of the general public in having that sidewalk kept free and unobstructed for the use of pedestrians.

That the Express Company is engaged in the business of carrying all kinds of freight and express matter, including combustible and explosive substances, which it transports in freight or express cars owned by it and used only for its private business of carriage of freight and express matter and that the United Railways Company hauls such cars over its lines without any warrant or authority of law; that by ch. 390 of the Acts of 1898 the Legislature attempted to authorize The Baltimore Consolidated Railway Company to transact an express business over its lines in Baltimore city and adjoining counties, but if that Act be valid and the benefit of it passed to the United Railway Company it would not authorize that company to transact such business by hauling over its lines the cars of Gaither's Express Company.

That Gaither's Express Company proposes to use its recently acquired warehouse No. 407 West Lombard street for a distributing depot of all kinds of freight and express matter, including inflammable and explosive materials, and desiring to have the proposed switch connection with the railway tracks in the bed of the street and not having itself the power to construct a track on either the street or the sidewalk it induced the United Railways Company to procure from the City of Baltimore supposed authority for that purpose by the passage of the Ordinance of February 6th, 1905, of which and the plat herein referred to copies were filed with the bill as exhibits. The ordinance is then alleged to be void because it is self

contradictory in its terms and provisions and also because the small sum of fifty dollars charged for the franchise is not in compliance with sec. 37 of the Baltimore City Charter. A third reason alleged for the invalidity of the Ordinance is that the business of the Express Company is a private and not a public one and that the city has no power to authorize the laying of the switch, or the overhead construction of wires necessary for its operation, over the street or the sidewalk for the benefit of a purely private enterprise.

The bill then charges that the construction and operation of the proposed switch with its overhead wires would seriously damage the plaintiff's properties and menace the lives of many persons lawfully occupying them by increasing the danger of fire, and would also seriously interfere with the access to their premises and would especially interfere with the receipt and shipment of goods by the occupants of the property of the appellant the Resinol Chemical Company whose warehouse adjoins that of the express company and would inflict upon the appellants great damages for which there would be no adequate remedy at law.

The prayer of the bill is that the Ordinance of February 6th, 1905, may be declared void, that the United Railways Company may be restrained from constructing or operating the proposed switch and the overhead trolley wires and for general relief.

The Gaither's Express Company intervened by petition and asked to be made a co-defendant in the case, which was done by an appropriate order of Court, and then it also demurred to the bill.

The Court below after a hearing upon the demurrers, sustained them, and the plaintiffs declining to amend their bill the Court dismissed it by the decree appealed from.

The theory of this bill is that the express business as now conducted by the United Railways, through the agency or Gaither's Express Company, by transporting the express cars of only the latter company is in fact a private business which the Railways Company cannot lawfully conduct, and that

therefore the City of Baltimore has no power to authorize the construction of the proposed switch to the express company's warehouse to be used in conducting that kind of an express business, as to do so would be to devote the public street to private uses. The assertion is also made that the Ordinance of February 6th, 1905, purporting to authorize the construction of the switch is void because of the alleged inherent defects already referred to. The broad allegations made in the bill that the Railways Company is carrying on its lines the cars of the Express Company without any warrant or authority of law, and that the City of Baltimore could not lawfully authorize the construction of the proposed switch constitute mere conclusions of law, the truth of which is not admitted by the demurrers. The sufficiency of the bill must be tested by ascertaining whether the facts stated in it justify the conclusions at which the plaintiffs arrived.

We will first consider the validity of the Ordinance of February 6th, 1905 authorizing the construction of the switch. There is an apparent conflict or inconsistency between the declared purpose and express provisions of the title and body of this Ordinance and the statement contained in its second section that the switch should be so constructed and laid down as "not to interfere with or encroach upon the sidewalks or gutters as now laid out and existing upon and along the streets above mentioned." Taken by itself this provision looks like a flat prohibition to lay the switch across the sidewalk, but read in connection with the other portions of the Ordinance and the plat therein referred to, it becomes apparent that no such intention can be ascribed to the authors of that piece of legislation. In the first place the express purpose of the Act as declared in its title is to grant permission "to connect" the railway tracks on Lombard street, west of Eutaw street "with the proposed improvements to be erected by the Gaither's City and Suburban Express Company on the south side of Lombard street." The first and enacting clause of the Ordinance also authorizes the United Railways Company to "lay down, construct, operate and maintain single track curves" with the

necessary overhead trolley wires "to connect" its tracks on Lombard street" with the proposed improvements to be erected by the Gaither's City and Suburban Express Company on the south side of Lombard street west of Eutaw street *in accordance with the plat filed in the office of the City Engineer.*" There is no allegation in the bill that the warehouse of the Express Company is so constructed as to extend beyond the building line. It must therefore be presumed that it is located like other buildings back of that line where the switch could not reach it without crossing the sidewalk. Furthermore on the plat, "in accordance with" which the Ordinance declared that the switch should be constructed, it is shown as not only crossing the sidewalk but extending some distance, as such switches usually do, into the warehouse which it is intended to serve.

In *Burk* v. *Baltimore*, 77 Md. 468, this Court held that an ordinance for opening a street which contained only a vague description of the lines of the proposed street but referred to a plat on which the lines were correctly laid down was effective to locate the street according to its position on the plat. In the opinion in that case the Court say: "Whatever may be said as to the vagueness of the ordinance, without reference to the plat therein referred to, all ambiguity disappears when the plat is examined, for the exact direction, location and width of the proposed street therein appear. It was entirely proper, instead of trying to give a minute and accurate description, to provide in the ordinance that Whitelock street should be condemned and opened 'as located on said plat.' This course was approved in *Baltimore* v. *Bouldin*, 23 Md. 371. The ordinance does not undertake to define with accuracy the lines of the proposed street, the plat being referred to for that purpose, and if there should be any variance between the courses and distances and measurements contained in the ordinance and those set forth in the plat, the latter will govern. This is the rule where a plat or map is referred to in a deed, and we can see no good reason why the same rule should not apply here."

Applying to the ordinance now before us the same rule of interpretation as that adopted in Burk's case, as we think we should, it must be construed to authorize the laying of the switch across the sidewalk to connect with the Express Company's warehouse but to require the rails to be so laid as not to project above or break the level of the foot pavement, or impede the flow of water in the gutter.

The smallness of the charge of $50 made for the franchise of laying and maintaining the switch cannot be held to invalidate the ordinance it not being alleged in the bill that the amount of the charge was collusively or dishonestly arrived at or was not fixed by the Board of Estimates in the manner prescribed in sec. 37 of the Charter.   The law confers upon the Board of Estimates and not upon the Court the power and discretion of determining the prices to be charged for franchises in the public streets granted by ordinances of the Mayor and City Council.

Nor can it be said that the business of Gaither's Express Company was a strictly private one.   It was held in *Bank of Kentucky* v. *Express Co.*, 93 U. S. 174, that a company "engaged in the business of carrying for hire money, goods and parcels from one locality to another" was a common carrier although it employed railroads and other public conveyances to transport the articles for it, while remaining in charge of its own servants.   See to same effect 12 *A. & E. Encycl.* 2 ed., p. 543; 19 *Cyc.* 22.   The bill before us alleges "that Gaither's City and Suburban Express Company is *engaged in the business of carrying* all kinds of portable freight and express matter   *   *   * to and from Baltimore City and certain nearby towns and villages."   It is true that it further alleges that this freight and express matter is carried only in cars used for the business of Gaither's Express Company, but it is a matter of common knowledge that express companies frequently if not ordinarily conduct their business in that manner. Such a business of transporting freight and packages for the public can with no more propriety be called a private one than the business of carrying the public themselves as passengers.

It necessarily follows that the city of Baltimore in permitting the United Railways Company to lay and maintain the proposed switch to connect its lines by a curved track, as shown on the plat referred to in the Ordinance, with the express company's warehouse, to facilitate conducting an express business in the manner already mentioned, was appropriating the public street to legitimate uses for the benefit of the community at large and that it did not exceed its powers in so .doing.

The bill charges that the Act of 1898, ch. 390, purporting to authorize the Baltimore Consolidated Railway Company, which at the date of the passage of the Act owned and operated the tracks on Lombard street, to transact an express business upon its lines of railways located in Baltimore City and adjoining counties, would, if the benefit of the Act passed to the United Railways Company, authorize that company only to run its own freight or express cars for the carriage of express matter for the public and would not authorize it to haul the private express or freight cars of one person or corporation only. There is no allegation in the bill that the United Railways Company has ever refused to haul on its lines the freight or express cars of any express company or that any such company other than the Gaither's Company had demanded to have its cars so hauled or transported. Nor is it alleged in the bill that the United Railways Company is without authority to carry on an express business over its own lines by means of its own cars.

Assuming that the United Railways Company is authorized to transact an express business on the Lombard street and other lines formerly operated by the Baltimore Consolidated Railway Company, there is good authority for holding that it would have the right to limit the express business on its lines to a single express company if it thereby afforded to the public reasonable express facilities. In the *Southern Express Company's cases*, 117 U. S. 1, it was held that in the absence of some special statute there is no law or usage having the force of law requiring railroad companies to furnish express

facilities to all express companies which may demand them, the Court there saying "so long as the public are served to their reasonable satisfaction it is a matter of no importance who serves them. The railroad company performs its whole duty to the public at large and to each individual when it affords the public all reasonable express accommodations. If this is done the railraod company owes no duty to the public as to the particular agencies it shall select for that purpose. The public requires the carriage but the company may chose its own appropriate means of carriage always provided they are such as to insure reasonable promptness and security."

: The present case differs from those of *Townsend* v. *Epstein*, 93 Md. 537, and *Van Witsen* v. *Gutman*, 79 Md. 405, relied on by the appellants, in that in each of those cases the acts enjoined were attempted appropriations, under the authority of void municipal ordinances, of portions of public streets to what the Court determined to be exclusively private uses. In the present case the act complained of is the proposed laying in a public street of a switch or spur from an existing railway track, to an express company's warehouse on the side of the street, to be used for purposes which we have determined to be not private but public in their nature.

The appellants earnestly contended before us that the Act of 1898, ch. 390, granting to the Consolidated Railway Company the right and franchise of transacting an express business over its lines, when read, as they insisted it should be, in connection with secs. 8, 9 and 37 of the Baltimore City Charter passed at the same session of the Legislature, did not authorize the railroad company to conduct such a business over the portion of its lines lying within the city without first obtaining a franchise for that purpose from the municipal authorities. An examination of those three sections of the City Charter discloses the fact that they relate solely to franchises *granted by the Mayor and City Council* and not to those granted by the Legislature. Whatever may be said of the expediency of the granting by the Legislature of franchises in the streets of the city without requiring adequate compensation therefor to be

paid to the municipality, there can be no doubt, in view of the decisions of this Court, of the power of the Legislature to make such grants. *Groff* v. *Frederick City*, 44 Md. 67; *Hodges* v. *Railway Co.*, 58 Md. 619; *Baltimore* v. *The State*, 15 Md. 462; *Revell* v. *Annapolis*, 81 Md. 9; *Humphrey* v. *Baltimore*, 47 Md. 151–2; *Hiss* v. *Balto. & Hampden R. R. Co.*, 52 Md. 254.

When the proposed switch is constructed neither the United Railways Company nor the Gaither's Express Company will have any exclusive or superior right to use or occupy the portions of the street or sidewalk over which the switch runs. The right of the appellants as property owners in that connection as well as those of persons passing along the street, will be the same after the switch is made that they were before. The railway company and the property owners have equal rights to the use of the public streets which each must exercise reasonably with respect to the right of the other. Cars cannot be permitted to so stand upon the switch as to prevent other vehicles from passing. "If at any time the owner has occasion for the presence of vehicles in front of his property on the street to take away or deliver persons or goods he may exercise that right for such reasonable time as is necessary for his purposes; and if, in such exercise of the right, the passage of the street cars is impeded the street cars must wait." *Poole* v. *Falls Road Ry. Co.*, 88 Md. 540; *Hodges* v. *Railway Co.*, *supra*; *Lonaconing Ry. Co.* v. *Consolidated Coal Co.*, 95 Md. 636. The portion of sec. 2 of the Ordinance of February 6th, 1905, imposing a penalty for hindering or delaying the cars by the use of other vehicles on the switch must be construed to relate only to an unreasonable hindrance or delay and cannot be held to have been intended to prevent or punish the reasonable use by adjacent property owners or persons having business with them of the public streets in front of their premises.

Both the railway company and the express company must so use the switch, when constructed, as not to unnecessarily or improperly interfere with the rights of the public or the adja-

cent property holders and if they fail to do so and injury results from such failure the proper tribunals will afford relief to the injured persons.    But we cannot anticipate defaults or acts of negligence or abuse on the part of the companies in maintaining and using the switch or in the storage or handling of such inflammable or explosive substances as may be lawfully committed to them for transportation.    *Green* v. *City and Suburban Railway Co.*, 78 Md. 308.

The decree appealed from will be affirmed.

*Decree affirmed with costs.*